IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **GABRIEL LADO,** | CASE NO.: 1:20-CV-01417 |
| Plaintiff, | JUDGE: CHRISTOPHER A. BOYKO |
| -vs- | |
| **ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY,** | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| Defendant. | |

Plaintiff Gabriel Lado, on his own behalf and on behalf of all other Ohio residents similarly situated, for his first amended class action complaint against Defendant Allstate Vehicle and Property Insurance Company, states:

1. Defendant Allstate Vehicle and Property Insurance Company ("Allstate" or "Defendant") is a subsidiary of The Allstate Corporation ("Allstate Corporation"), a publicly traded company that owns and controls Defendant.

2. Defendant is, or at a point in time relevant to this case was, licensed to sell property and casualty insurance in the State of Ohio.

3. Defendant maintains numerous offices in Ohio for the conduct of its usual and customary business, including the sale of insurance policies.

## PARTIES

4. Plaintiff is a resident and citizen of the State of Ohio.

5. Defendant Allstate is organized under the laws of the State of Illinois and headquartered in Northbrook, Illinois. Allstate is authorized to sell property insurance policies in the State

1

of Ohio and is engaged in the insurance business in the State of Ohio, including Cuyahoga County.

## JURISDICTION AND VENUE

6. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d)(2). There are more than 100 members in the proposed class, at least one member of the proposed class has state citizenship that is different than Defendant's, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendant as Defendant has sufficient minimum contacts with the state of Ohio, is authorized to do business in Ohio and has availed itself of the privilege of conducting business in the State of Ohio.

8. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b) because Defendant has its agent for service of process in this District, for conducting business in this state, including the conduct alleged in this complaint. Venue is also proper pursuant to 28 U.S.C. §1391(c) because Defendant is a corporation deemed to reside in this District.

## THE WRONGFUL CONDUCT

9. This case involves systematic adjusting practices used by Defendant to understate, and under-pay, the actual cash value of property damage suffered by its insureds, thereby denying its insureds (including Lado) the full amount of indemnity to which they are entitled.

10. Defendant intentionally and fraudulently made affirmative misrepresentations to its insureds to conceal its unlawful claims adjusting practices from its policyholders and state regulators so as to avoid lawsuits of this nature, and in the hope of running out the clock

on claims under Defendant's contractual time limit buried in Defendant's standard insurance policy.

11. Defendant routinely understates actual cash value by depreciating the labor component of repair costs, instead of only the physical items that is subject to wear, tear, and obsolescence, and also depreciates contractor overhead and profit even though those items are not subject to wear, tear, and obsolescence.

12. Defendant lies to its policyholders by affirmatively telling them that only physical "items" that suffer wear and tear are being depreciated, while Defendant surreptitiously deducts unlawful labor depreciation and fraudulently conceals it from its policyholders.

13. Traditionally, and prior to the advent of the computerized property insurance claims estimating software programs, property insurance adjusters adjusting structural damage claims were taught only to depreciate materials, and not depreciate labor, when calculating ACV. *See, e.g.*, Don Wood *et al.*, *Insurance Recovery After Hurricane Sandy: Correcting the Improper Depreciation of Intangibles Under Property Insurance Policies*, 42 TORTS, INS. & COMPENSATION L.J. 19, 24 (Winter 2013) ("I was taught many years ago that depreciation, when it was applied, must be done on a line-by-line, item-by-item basis…. I obtained charts of the average lifespans of materials. A few sample pages from the National Association of Home Builders is attached. Material lifespans shown in the attachment were derived from reports of product manufacturers. Nowhere in any of the lists of materials is any labor item mentioned …"); Chip Merlin, *Few Judges and Insurance Regulators Worked in Property Claims: Understanding New Insurance Rulings*, PROP. INS. COV. LAW BLOG (August 16, 2017) ("when I was starting out, an older and experienced GAB [General Adjustment Bureau] adjuster told me they never depreciated labor").

14. In contrast to the traditional property insurance industry approach, and in the past ten to fifteen years, commercially available claims estimating software programs began to provide a property insurer with the option to withhold a portion of the labor needed to repair a structure as "depreciation" at the same time the program calculated the depreciation arising from the physical deterioration of building materials. This new option was created as property insurers, and their computer programmers, realized that withholding labor as "depreciation" could dramatically lower ACV payments.

15. The computer programs that provide an insurance company with the option to withhold labor as depreciation include not only the software program used by Defendant—Xactimate, but also most of the prevalent claims estimating software programs used today. These claims estimating software programs all provide for the option of withholding of labor as depreciation by simply checking or unchecking a box with a computer mouse. For example, the below screenshot from the Xactimate program shows that an insurer can choose to select or de-select "Depreciate Non-Material" and "Depreciate Removal," both of which are labor items.



Exhibit 1 attached hereto includes similar screenshots from the other primary valuation software platforms: Powerclaim®, Simsol®, and Symbility®. Like Xactimate®, each allow the insurance company user the option to choose whether or not to depreciate items which are NOT traditional subjects of depreciation, that is, which are not items that

decrease in value due to age, usage, and the like. In fact, Powerclaim® states that "Tax and Labor can be optionally depreciated. Choose the appropriate setting for defaults." *Id*.

16. Insurance companies such as Defendant typically issue company and state-wide directives, to all of their property adjusters, instructing them uniformly to either depreciate non-materials or not. Those choosing to do so make that choice because such depreciation results in a tremendous difference (lessening) the amount a property insurer will pay for the ACV of claims.

17. In 2011, the Ohio Department of Insurance referred to the practice of ***not*** depreciating labor as traditional insurance industry practice. *See Market Conduct Examination of Sandy and Beaver Valley Farmers Mutual Ins. Co. as of June 30, 2011*, Ohio Dep't of Insurance, at 6 (May 21, 2012) ("Sandy and Beaver Valley Exam")[1] (insurer should not depreciate labor on ACV claims "in order to be consistent with the industry practice of not depreciating labor").

18. As a prominent property insurer that does a significant amount of business in Ohio, Defendant knew or should have known of the existence of the *Sandy and Beaver Valley* examination report.

19. Despite the Ohio Department of Insurance's position articulated in the Sandy and Beaver Valley Exam, Defendant continued to withhold labor depreciation from actual cash value payments without any disclosure of that practice in its policies or on the claim estimates provided to policyholders, and continued to purposely withhold that key information from the named plaintiff, the putative class, and the general public.

---

[1]  Available at: http://www.insurance.ohio.gov/Company/MC/Sandy%20and%20Beaver%20Valley%20Exam%20Report.pdf.

5

20. By at least 2011 then, Defendant was aware of or should have been aware that the Ohio Department of Insurance took a position against the depreciation of labor.

21. As a result, by 2011, property insurers in Ohio had two primary options concerning labor depreciation. On the one hand, property insurers could issue restricted insurance policy coverage forms ("labor depreciation permissive forms") to expressly allow for the new practice of withholding labor as depreciation. Those policies would provide actual notice to policy holders that the carrier was depreciating items not traditionally subject to depreciation (such as labor, contractor O & P, etc.)

22. Property insurers who chose this option had the obvious benefit of substantially lowering ACV claim payments, but risked losing market share based upon newly introduced coverage forms that restricted the amount of coverage provided and would appear to consumers to be weaker, less desirable insurance.

23. Several property insurers operating in Ohio have long chosen this path. For example, State Farm and Farmers Insurance have both filed an endorsement or amended policy form with the Ohio Department of Insurance that defined "actual cash value" and stated "labor … is subject to depreciation," thus disclosing to regulators and policyholders alike that moving forward labor would be depreciated.

24. On the other hand, property insurers could also reject the new practice of withholding labor as depreciation from ACV payments. These carriers continue to pay ACV claims at the traditional, but substantially higher rate. For example, the Nationwide Insurance Group does not withhold labor depreciation from ACV payments.

25. Unfortunately, certain property insurers, to obtain an advantage over their competitors and policyholders, rejected both approaches. These insurers chose not to risk their market share

6

by notifying policyholders, through restricted ACV coverage forms, that they would be depreciating items not typically subject to depreciation. They chose not to risk their market share by notifying policyholders, through restricted ACV coverage forms, that they would pay less for ACV payments.

26. At the same time, these insurers surreptitiously withheld labor depreciation from ACV payments—without a change of policy forms and without informing policyholders. Defendant has taken this approach with respect to the claims at issue in this class action.

27. To make matters worse, Defendant lied to policyholders on loss estimates by describing depreciation as only applying to physical "items," thus fraudulently misrepresenting and intentionally concealing its depreciation of labor with the intent to deceive its policyholders and prevent them from discovering Defendant's breach of contract.

28. Simply put, a policyholder cannot discover that labor is being depreciated by Defendant by the policy language or the repair estimate.

29. Defendant's conduct was unfair to both its own policyholders and competing property insurers. Defendant's competitors: (1) continued to pay higher claims rates under policies similar to those used by Defendant; or (2) risked losing market share by creating and disclosing restricted policy forms notifying policyholders that they would begin to pay less for ACV claims. Defendant avoided both adverse consequences through its fraudulent and unlawful actions complained of herein.

30. When calculating Plaintiff's and putative class members' ACV benefits Defendant withheld a portion of the labor costs necessary to repair or replace its policyholders' properties under coverage forms that did not permit labor depreciation.

31. Defendant surreptitiously depreciated costs associated with non-materials, *i.e.*, labor and overhead and profit, throughout its ACV calculations, without revealing this material fact to plaintiff, the class members or the public, and concealing same intentionally from them by purposely selecting the setting that conceals, and does not print, the lines showing that labor has been depreciated.

32. Defendant's withholding of labor costs associated with the repair or replacement of the insured properties resulted in Plaintiff and putative class members receiving payment for their losses in an amount less than they were entitled to receive under policies that never included a form authorizing the practice.

33. Defendant's conduct also resulted in the Plaintiff and the putative class being misled that they were receiving proper payment, and misled into believing their contract was being followed, when they were not.

34. The residential home owned by Lado ("the Home"), suffered substantial damage on or about May 27, 2019.

35. Much of the Home was damaged and required repair and restoration.

36. At the time of the loss the Home was insured by Allstate policy no. 000992502366 underwritten by defendant Allstate Vehicle and Property Insurance Company. A copy of the insurance policy is attached as **Exhibit 2**.

37. The policy included, among other coverages, indemnity coverage for physical damage to the Home caused by perils other than those specifically excluded under the policy.

38. Lado submitted a claim to Allstate and requested payment for the damage to the Home.

39. Allstate confirmed that the Home had sustained damage due to a covered peril and that Allstate had an obligation and duty to pay Lado for the repair or replacement of the

damaged portions of the Home pursuant to the terms of his insurance policy.

40. Allstate appointed an adjuster to adjust Lado's claim in accordance with Allstate's adjusting policies and procedures, and that adjuster inspected the damage to the Home for purposes of preparing an estimate of the cost to repair or replace the damaged property.

41. The Allstate adjuster submitted a final estimate for repair of the damage to the Home, a copy of which is attached hereto as **Exhibit 3**.

42. The adjuster's estimate found that Lado had suffered loss and damage to the Home in the amount of $9,436.09.

43. The repair costs estimated by the Allstate adjuster included costs for material and labor to repair the Home, and sales tax on materials.

44. Defendant's policy contains no definition of actual cash value ("ACV"), but nonetheless provides that Defendant will only pay the ACV of a loss to the insured until the repair or replacement of the damaged property is actually completed.

45. Defendant's estimate provided to Lado calculated ACV as repair or replacement cost of the damaged part of the property less depreciation.

46. Defendant's policy contains no definition of depreciation, but in the context of insurance law depreciation is defined as "[a] decline in an asset's value because of use, wear, obsolescence, or age." Black's Law Dictionary 506 (9th ed. 2009).

47. In calculating ACV Defendant reduced the amount it would pay Plaintiff by $2,278.62 for depreciation.

48. Defendant made a Net ACV payment of $6,157.47 to Lado after applying the $1,000 deductible.

49. In making its ACV calculation, Defendant depreciated the labor required to repair the

9

Home; but unlike a physical "asset," labor does not depreciate over time.

50. As confirmed above, the fact that this depreciation not only included materials, but also included depreciation of labor, was intentionally concealed from Plaintiff, and Plaintiff could not know this was done based on the policy, or the papers from Allstate and its adjuster.

51. The fact that Defendant never indicated that it was denying a portion of Plaintiff's ACV claim, by withholding depreciation from labor costs, deprived Plaintiff of the ability to object to Defendant's unlawful conduct and file suit.

52. Allstate depreciated costs associated with labor throughout its ACV calculations, including the labor costs for repairing and replacing the roof on the Home, in many instances depreciating the labor costs by over 50%.

53. The Ohio Department of Insurance has indicated that it is inappropriate and contrary to industry practice to depreciate labor.

54. Defendant intentionally and with the intent to fraudulently conceal its wrongful conduct chose to hide the fact that it was depreciating labor by withholding a detailed breakdown of the material and labor components of certain repair items.

55. Defendant's intentional concealment of its wrongful depreciation of labor was even more insidious, because Defendant's estimate did not depreciate certain items of pure labor, thus making it appear that Defendant was not depreciating labor when in fact it did withhold a portion of the labor costs as depreciation.

56. The Xactimate program used by Defendant to prepare Plaintiff's estimate and those of all of the class members includes user controlled settings that determine how much detail is shown on the estimate, and enabled Defendant to disclose rather than conceal the fact that

it was depreciating labor; Defendant chose to set the software to conceal its labor depreciation from Plaintiff and the class members.

57. Defendant's depreciation of labor costs associated with repairing the Home resulted in Lado receiving an ACV payment in an amount less than he was contractually entitled to under the insurance policy.

58. Allstate breached its obligations under the policy by improperly depreciating the cost of non-material items

59. As a direct and proximate result, Lado has suffered damage in an amount greater than $100.00.

**COUNT I**
**BREACH OF CONTRACT**

60. Lado restates and incorporates by reference all preceding allegations.

61. By depreciating labor and other non-material costs in the calculation of Lado's ACV payment, Defendant breached its obligations to Lado under the insurance policy.

62. Plaintiff and all plaintiff class members satisfied or discharged all conditions precedent to Defendant's obligations under the contract.

63. As a direct and proximate result of Defendant's breach of its obligations under the policy, Lado and the class members have received payment for their losses in amounts less than they were entitled to under their homeowners' insurance policies.

64. As a result of Defendant's breach of its contractual obligations under the contract Defendant has waived and forfeited its right to enforce conditions set forth in the contract, including but not limited to any provision limiting the time in which suit must be filed.

65. Defendant's practice of depreciating labor and other non-material items in the calculation of ACV payments made in connection with property damage claims under Defendant's

homeowners' policies in Ohio is a breach of Defendant's obligations under those policies.

## CLASS ACTION ALLEGATIONS

    A. **Class Definition**

66. Lado seeks to represent a class defined as follows:

All Allstate policyholders under any property policies issued by Allstate who made: (1) a structural damage claim for property located in the State of Ohio; and (2) which resulted in an actual cash value payment from which "non-material depreciation" was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of "non-material depreciation" causing the loss to drop below the applicable deductible.

    a. In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate software.

    b. The class period for the proposed class is the maximum time period as allowed by applicable law.

    c. The class excludes all claims arising under policy forms expressly permitting the "depreciation" of "labor" within the text of the policy form and any claims in which the initial actual cash value payment exhausted the applicable limits of insurance.

    d. Excluded from the Class are: (1) all persons or entities that received payment from Defendant in the full amount of insurance shown on the declarations page or that otherwise received payment of the withheld depreciation; (2) Defendant and its affiliates, officers or directors; (3) members of the judiciary and their staff to whom this action is assigned; and (4) Plaintiff's counsel.

    B. **Class certification under Civil Rule 23(b)(3).**

67. The relatively small amounts of damage suffered by each class member make filing separate suits by each class member economically unfeasible.

68. Lado is similarly situated to the members of the class, and will fairly and adequately represent all members of the class.

69. Lado has no relationship with Allstate other than as an adverse party in this case.

70. Plaintiff Lado's claim is typical of the class claims.

71. Calculating damages on a class-wide basis is straight forward and easily accomplished by simply running Xactimate with the "depreciate removal," "depreciate non-material" and "depreciate O&P" option settings un-checked, then subtracting the resulting depreciation amount from the depreciation amount originally withheld by Defendant, and adding interest at the legal rate up to the point when Defendant pays the damages.

72. Common questions of law and fact apply to Lado's claims and the claims for the class, and those common questions predominate over individualized questions.

73. These common questions that are amenable to class wide resolution include:

    a. Whether Defendant's policy language allows Defendant to depreciate labor costs and contractor overhead and profit in the calculation of ACV payments;

    b. Whether Defendant's depreciation of labor costs and contractor overhead and profit in calculation of ACV payments breaches the insurance policy;

    c. Whether the term "actual cash value" as used in the Defendant homeowners insurance policy is ambiguous and susceptible to more than one reasonable interpretation, including an interpretation that permits depreciation of material only and not labor and contractor overhead and profit;

    d. Whether Defendant has a custom and practice of depreciating labor costs and contractor overhead and profit in the calculation of ACV payments;

    e. Whether Defendant made fraudulent misrepresentations to the class members to conceal its unlawful practice of depreciating non-material costs;

    f. Whether Defendant engaged in a course of conduct designed to fraudulently conceal its wrongful depreciation of non-material costs from the class members; and,

    g. Whether Lado and the putative class have suffered damage as a result of Defendant's depreciation of labor costs and contractor overhead and profit in calculation of ACV payments.

74. Proposed counsel for the proposed class, Garson Johnson LLC, Dworken & Bernstein, Co., LPA, Mehr, Fairbanks & Peterson and Whetstone Legal, LLC are knowledgeable and experienced in class and insurance litigation and will fairly and adequately represent the

interests of the proposed class.

75. The questions of law and fact common to members of the proposed class predominate over any individual questions of law or fact affecting any member of the class and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

76. No unusual difficulties are anticipated in the management of this case as a class action.

77. Damages can be calculated easily in this case on a class-wide basis in the same manner as the Sixth Circuit Court of Appeals outlined in its decision in *Hicks v. State Farm Fire & Cas. & Co.*, 2020 WL 3888156 (6th Cir. July 10, 2020), since Allstate uses the exact same software program in the exact same manner as State Farm.

78. The proposed class consists of more than 40 individuals.

**C. The class period is defined in light of Defendant's affirmative misrepresentations and its fraudulent concealment.**

79. The maximum length of the putative class period depends on the accrual of the causes of action for breach of contract, including but not limited to inherent discoverability of the breach, Defendant's affirmative misrepresentations, and its intentional concealment of its unlawful practice of depreciating labor, and the stay of the statute of limitations created under Ohio law due to the pendency of *Perry v. Allstate Indemnity Company, et al.,* Case No. 1:16-01522 (N.D. Ohio). Defendant was a party defendant in *Perry* up until the Sixth Circuit's judgment and mandate issued in the appeals of that case.

80. In addition, any affirmative defenses Defendant may assert seeking to limit the length of the putative class period are subject to judicial doctrines concerning the accrual of the putative class members' claims and Defendant's fraudulent concealment of those claims.

81. Defendant fraudulently concealed and intentionally misrepresented its practice of withholding labor as depreciation from both state regulators and putative class members.

82. At all times relevant hereto, Defendant's insurance policies neither addressed nor called for removal or repair labor to be withheld as depreciation.

83. Similarly, Defendant's marketing materials did not address this practice, and consumers were not told of this practice when purchasing Defendant's property insurance products.

84. Defendant never notified the Ohio Department of Insurance that Defendant was in fact withholding labor within the State of Ohio and elsewhere under property policies that did not call for that practice.

85. To further conceal its practice of withholding labor as depreciation, and to avoid any disputes with regulators and policyholders who made claims, Defendant unfairly used its claim estimating software to conceal its practice from policyholders.

86. Like most property insurers, Defendant used a product called Xactimate to determine the amount of depreciation to apply to a claim. Xactimate is used by both insurers and contractors to calculate the cost of rebuilding or repairing damaged property. Xactimate uses "line item" pricing to determine repair costs.

87. For all line items, Xactimate allows an insurer to depreciate labor by toggling on or off depreciation settings called "depreciate removal" and "depreciation non-material." If both of these settings are toggled on, then all line items will show the withholding of labor as depreciation.

88. Defendant affirmatively hid and misrepresented its use of its labor depreciation settings in Xactimate from both policyholder claimants and insurance regulators, if any, that may have investigated the same, by not disclosing its depreciation option settings in the estimates

provided to policyholders (which the Xactimate setting allows) and by affirmatively misrepresenting what it was depreciating.

89. Defendant further did so by affirmatively telling Plaintiff and the putative class and general public that the depreciation being taken was of items based on age and life expectancy, which was intentionally and materially false, and designed to and did mislead Plaintiff and the putative class, since labor and contractor O & P does not age, depreciate or have a life expectancy.

90. Defendant did not disclose and misrepresented on the paperwork accompanying the Xactimate estimate whether it was depreciating labor. Other property insurers can and do disclose whether they are engaging in the practice of withholding labor as depreciation in the policy and/or in the paperwork accompanying the Xactimate estimate.

91. This is readily available because Xactimate has printing options that allow the user to print the depreciation option settings used on the estimate, specifically including whether non-materials are being depreciated. Other property insurers can and do print this key and material information on Xactimate estimates provided to policyholders. Defendant did not provide this information to its policyholders, and rather affirmatively misrepresented same by falsely describing depreciation to fraudulently deceive its policyholders.

92. As a result, Defendant took several affirmative steps to prevent an ordinary consumer (including Plaintiff) or insurance regulators from knowing that Defendant depreciated labor, and not merely materials, when making ACV payments to policyholders.

93. At all times relevant hereto, Defendant was under an affirmative duty to fairly and fully disclose the manner in which it calculated ACV payments to policyholders. In addition, when providing estimates to Plaintiff and similarly situated policyholders, Defendant was

16

under a duty to be truthful, and to not deceive by omission, concealment or by affirmative misrepresentation.

94. Defendant lied to and committed fraud by omission and commission against its policyholders to prevent them from pursuing the claim asserted herein.

95. Defendant was in a superior position over policyholders to know that it was depreciating labor through Xactimate.

96. Defendant's policyholders are not sophisticated in insurance claims handling procedures like Defendant, and they had no way to discern that Defendant was depreciating labor from the ACV calculations provided by Defendant. Defendant's false and deceptive description of depreciation further deceived policyholders and prevented them from discovering Defendant's wrongful conduct.

97. In addition, Defendant controlled the settings for the software, which expressly permit a company to properly limit depreciation to materials only. Moreover, policyholders do not have access to Defendant's software to determine whether it was used to depreciate labor costs. Without such access, and due to Defendant's affirmative steps taken to conceal and misrepresent its depreciation of labor costs, Defendant's policyholders lacked the same access to information enjoyed by Defendant, and were provided false information by defendant, and could not determine that Defendant was depreciating labor costs.

98. Defendant's unlawful practice of depreciating labor was not disclosed in the insurance policy, in the claim estimate, in the form cover letter accompanying the estimate, in the marketing materials, or in Defendant's regulatory filings. Just the opposite, Plaintiff and the putative class members were told that depreciation being applied was to items based on their age and life expectancy. The facts Defendant affirmatively misrepresented and

fraudulently concealed are material to the cause of action for breach of the insurance contract, and are facts that a reasonable person would have considered important in knowing that a breach had occurred and in making a claim for breach of the policy in a timely manner.

99. Defendant's affirmatively misrepresentations and fraudulent concealment of material information in estimates and other statements was intended to deceive and did deceive policyholders, in that policyholders would not know that their claim payments were actually diminished by the withholding of repair labor through the unfair manipulation of the Xactimate software and that policyholders would not contest the concealed practice in court or through regulatory action.

100. Allstate never informed Plaintiff or any class members that Allstate was denying any portion of those individuals' ACV claims so as to alert those individuals that a lawsuit should be filed.

## **DEMAND FOR JUDGMENT**

Plaintiff Gabriel Lado, both individually, and on behalf of each member of the proposed class, requests that the Court grant the following relief:

a. Enter an order, pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying this action as a class action for a class defined above;

b. Enter an order appointing James A. DeRoche of Garson Johnson LLC, Patrick J. Perotti of Dworken & Bernstein, Co., LPA, Erik D. Peterson of Mehr, Fairbanks & Peterson and Stephen G. Whetstone of Whetsone Legal, LLC as counsel for the plaintiff class, and appointing Plaintiff Lado as the representative Plaintiff for the class;

c. Enter judgment in favor of plaintiff and the plaintiff class for their actual damages, being the amount that Allstate reduced actual cash value payments to each class member by depreciating the cost of labor and/or contractor overhead and profit, and interest as provided by law;

d. Award Lado and the plaintiff class all expenses of this action, and requiring Allstate to pay the costs and expenses of class notice and claim administration,; and

e. Award such other or further relief in law or equity in favor of plaintiff and the plaintiff class and against Defendants as the Court finds just and appropriate.

*/s/ James A. DeRoche*_____
James A. DeRoche, Esq. (#0055613)
**GARSON JOHNSON LLC**
1600 Midland Building
101 West Prospect Avenue
Cleveland, Ohio 44115
Phone: (216) 696-9330
Fax: (216) 696-8558
Email: jderoche@garson.com

Patrick J. Perotti, Esq. (#0005481)
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
Phone: (440) 352-3391
Fax: (440) 352-3469
Email: pperotti@dworkenlaw.com

        Erik D. Peterson
Mehr, Fairbanks & Peterson
201 West Short Street, Suite 800
Lexington, KY  40507
Phone: (859) 225-3731
Fax: (859) 225-3830
Email: edp@austinmehr.com
Stephen G. Whetstone
2 North Main Street
P.O. Box 6
Thornville, OH  43076
Phone: (740) 78507730
Fax: (740) 205-8898
Email: steve@whetsonelegal.com

*Counsel for Plaintiff*